UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:24-cv-00830-MRA-AJR | Date | March 21, 2025 |
|---|---|---|---|
| Title | Fahimeh Mirzaie v. U.S. Department of State, et al. | | |

| Present: The Honorable | MONICA RAMIREZ ALMADANI, UNITED STATES DISTRICT JUDGE |
|---|---|

| Gabriela Garcia | None Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| None Present | None Present |

**Proceedings:    (IN CHAMBERS) ORDER GRANTING DEFENDANTS' MOTION TO DISMISS [ECF 33]**

Before the Court is Defendants' Motion to Dismiss Plaintiff's Complaint.   ECF 33.   The Court read and considered the moving, opposing, and reply papers and held a hearing on the Motion.   ECF 49.   For the reasons stated herein, the Court **GRANTS** the Motion **with leave to amend**.

## I.    BACKGROUND[1]

On January 31, 2024, Plaintiff Fahimeh Mirzaie ("Plaintiff" or "Mirzaie") filed this action against Defendants U.S. Department of State (the "State Department"), Alyson Grunder in her capacity as Deputy Chief of the United States Mission to the Republic of Kosovo, Federal Bureau of Investigation (the "FBI"), and Central Intelligence Agency (the "CIA") (collectively, "Defendants" or the "government").   ECF 1 (Compl.).   For over a decade, Mirzaie, a U.S. citizen, has been attempting to reunite with her Afghan husband in the United States, where she and the couple's four U.S. citizen children reside.   *Id.* ¶¶ 1, 5.

Mirzaie fled Taliban rule in Afghanistan as a child and spent her formative years in California.   *Id.* ¶¶ 12, 13, 18.   She became a naturalized U.S. citizen, earned a bachelor's degree in biochemistry, and had dreams of pursuing medical school.   *Id.* ¶¶ 13, 14.   Her husband, Mr.

---

[1] The Court describes the factual background as alleged in Plaintiff's Complaint and in materials incorporated by reference in the Complaint or subject to judicial notice.   *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) (providing that, in general, a court may not consider materials outside the pleadings when assessing the sufficiency of a complaint under Federal Rule of Civil Procedure 12(b)(6)); *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (explaining that a facial attack to subject matter jurisdiction under Rule 12(b)(1) is resolved the same way as a motion to dismiss under Rule 12(b)(6)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:24-cv-00830-MRA-AJR | Date | March 21, 2025 |
|---|---|---|---|
| Title | Fahimeh Mirzaie v. U.S. Department of State, et al. | | |

R, is an Afghan citizen who grew up as a refugee in Iran. *Id.* ¶ 15. Mirzaie and Mr. R met in 2010, while Mirzaie was visiting her family in Afghanistan. *Id.* ¶¶ 18-20. They developed feelings for one another and continued their relationship after Mirzaie returned to the United States. *Id.* ¶¶ 21-22. As their relationship deepened, they shared hopes of raising a family in the United States. *Id.* ¶ 23.

In 2012, Mirzaie applied for a fiancé visa for Mr. R. *Id.* ¶ 24. The U.S. Department of Homeland Security ("DHS") approved Mirzaie's petition and transferred Mr. R's application to the State Department for visa processing. *Id.* ¶ 25. In 2013, Mr. R attended a visa interview at the U.S. Embassy in Kabul (the "Kabul Embassy"). *Id.* ¶ 26. After passing the required background checks, Mr. R was issued a fiancé visa. *Id.* ¶¶ 27-28. In 2014, to begin their life together, the couple attempted to travel to the United States via Istanbul, Turkey. *Id.* ¶¶ 29-30. At the Istanbul airport, they were informed that Mr. R would not be allowed to board the flight because the airline had received a notification from U.S. government officials that Mr. R could not fly. *Id.* ¶¶ 30-31. Confused, the couple sought assistance from the U.S. Consulate in Istanbul, where officials told them that they merely needed to complete a form. *Id.* ¶¶ 32-33. They completed the form at the consulate and were told that there should be no problem with Mr. R traveling to the United States. *Id.* ¶¶ 34-35.

Before Mirzaie and Mr. R could rebook travel, the Kabul Embassy requested that Mr. R appear in person at the embassy with his passport. *Id.* ¶ 36. The couple returned to Afghanistan, as instructed. *Id.* ¶ 37. At the embassy, Mirzaie was not allowed to accompany Mr. R to speak with embassy officials. *Id.* ¶ 38. An embassy official took Mr. R's passport and stamped "cancelled" on the previously issued fiancé visa. *Id.* ¶ 39. The official did not explain the reason for the cancellation. *Id.* ¶ 40. Mr. R was then called aside and taken to another building where he was questioned for approximately two hours first by FBI officials, then by CIA officials. *Id.* ¶¶ 41-42. No interpreter was present, which made it difficult for Mr. R to understand the government agents. *Id.* ¶ 44. The agents urged Mr. R to cooperate and assist U.S. law enforcement, insinuating that he would not be reunited with his family unless he did. *Id.* ¶¶ 45-46. Mr. R did not agree to become an informant. *Id.* ¶ 48. No consular official was present during this questioning. *Id.* ¶ 49. Mr. R's visa was never reissued. *Id.* ¶ 50. As a result, Mr. R missed the birth of the couple's first child in September 2014. *Id.* ¶¶ 51-52.

After Mirzaie and Mr. R married in 2015, Mirzaie filed a spousal visa petition for Mr. R. *Id.* ¶¶ 53-54. In August 2016, DHS approved the petition and transferred Mr. R's application to the State Department for visa processing. *Id.* ¶ 55. In March 2017, Mr. R received a notice of an interview appointment at the Kabul Embassy scheduled for May 2017. *Id.* ¶ 56. When Mr. R arrived for his scheduled interview, an embassy official handed him a written notice, not signed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:24-cv-00830-MRA-AJR | Date | March 21, 2025 |
|---|---|---|---|
| Title | Fahimeh Mirzaie v. U.S. Department of State, et al. | | |

by a consular officer, stating that his visa was denied. *Id.* ¶¶ 57-58. Mr. R was not interviewed by a consular officer. *Id.* ¶ 59. Shortly after, two individuals who identified themselves as FBI agents approached Mr. R and requested to interview him immediately. *Id.* ¶¶ 60-63. Over four hours of questioning, the FBI agents once more claimed that they could assist Mr. R with his visa application, but only if he cooperated. *Id.* ¶ 64. They threatened that if he did not assist U.S. law enforcement, he may never see his family again. *Id.* ¶ 65. Mr. R did not agree to become an informant. *Id.* ¶ 67. No consular officer was present at any point during the FBI's questioning of Mr. R. *Id.* ¶ 68. He never received a denial notice signed by a consular officer. *Id.* ¶ 69. At some point after this encounter, Mr. R's visa application status on the State Department's online system changed from "Denied" to "Administrative Processing." *Id.* ¶ 70. The couple understood this to mean that the unsigned denial notice was not genuine, and that the government was still considering his application. *Id.* ¶ 71. Mr. R missed the birth of the couple's second child in November 2017. *Id.* ¶¶ 72-73.

In 2018, with Mr. R's spousal visa application still showing as "Administrative Processing," Mirzaie and her children visited Mr. R in Iran for three months. *Id.* ¶¶ 75-76. With her Iranian visa expiring and Mr. R no longer holding any legal status in Iran, the couple made the difficult decision to move as a family to Afghanistan so that they could remain together while awaiting word on Mr. R's visa. *Id.* ¶¶ 77-78. In October 2020, Mirzaie gave birth to the couple's third child in California without Mr. R present. *Id.* ¶¶ 79-80. After giving birth, Mirzaie returned to Afghanistan with her children to be with Mr. R. *Id.* ¶ 81.

In August 2021, amid the United States' withdrawal from Afghanistan, the U.S. government evacuated Mirzaie, Mr. R, and their three children from Afghanistan. *Id.* ¶¶ 82-84. The family was brought to a U.S. military base in Italy. *Id.* ¶ 86. At the base, FBI agents questioned Mirzaie about her background and urged her to convince Mr. R to cooperate with law enforcement. *Id.* ¶ 87. Over 10 days, FBI agents also questioned Mr. R for hours, again offering to help Mr. R reunite with his family in the United States and threatening that the family would remain separated if he refused to assist them. *Id.* ¶¶ 88-89. No consular officer was present during any of this questioning. *Id.* ¶ 91. Mirzaie and her family's names were then listed on a publicly posted notice of families departing Italy. *Id.* ¶ 92. They understood this to mean that Mr. R had been granted humanitarian parole. *Id.* ¶ 93. Instead, just prior to travel, an FBI agent informed the family that Mr. R's humanitarian parole processing was still ongoing, and the family would not be able to travel together to the United States. *Id.* ¶ 94.

In September 2021, Mirzaie's family was relocated to Camp Bondsteel, a U.S. military base in Kosovo. *Id.* ¶ 95. Mirzaie and Mr. R did not receive any information about Mr. R's humanitarian parole application for several months. *Id.* ¶ 96. Mr. R was again questioned by

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:24-cv-00830-MRA-AJR | Date | March 21, 2025 |
|---|---|---|---|
| Title | Fahimeh Mirzaie v. U.S. Department of State, et al. | | |

U.S. law enforcement. *Id.* ¶ 97. No consular official was present at any of these interviews. *Id.* ¶ 99.

In March 2022, after receiving news that Afghans at Camp Bondsteel were being denied humanitarian parole, Mirzaie and Mr. R met several times with consular officer Ian Hayward ("Hayward") at the U.S. Embassy in Pristina, Kosovo (the "Pristina Embassy"). *Id.* ¶¶ 101, 103. Hayward informed them that Mr. R had been denied humanitarian parole. *Id.* ¶ 104. They did not receive anything in writing memorializing the denial, nor were they otherwise informed of the basis for the denial. *Id.* ¶¶ 105-06. With the humanitarian parole application denied, the couple asked Hayward about the long-pending spousal visa application. *Id.* ¶ 107. Hayward subsequently told Mirzaie that U.S. officials wanted her and Mr. R to appear at the Pristina Embassy for a new interview in connection with that application. *Id.* ¶ 109. At some point during this process, Mirzaie and Mr. R were informed that there was a cross-agency security team, called the "vetting team," that would be deciding whether to grant Mr. R permission to enter the United States. *Id.* ¶ 110. They were told that the vetting team was independent of the State Department and consisted primarily of agents from the FBI, CIA, and DHS. *Id.* ¶ 111. Hayward explained to Mirzaie that Mr. R would not be issued a visa until he was cleared by the vetting team. *Id.* ¶ 112.

In July 2022, Hayward informed the couple that there would be no new interview and that Mr. R's visa application was denied. *Id.* ¶ 114. Later that month, Mr. R's case status changed from "Administrative Processing" to "Denied." *Id.* ¶ 115. On August 17, 2022, Mirzaie and Mr. R received a signed denial notice regarding the spousal visa application. *Id.* ¶ 117. The notice referenced Immigration and Nationality Act § 212(a)(3), "Security and Related Grounds," but did not provide any further information on the grounds for denial. *Id.* ¶¶ 118-19. On July 10, 2022, Mr. R contacted the Pristina Embassy requesting a factual predicate for the denial. *Id.* ¶ 120. The Pristina Embassy had not responded to this request as of the filing of the Complaint. *Id.* ¶ 121.

Mirzaie, Mr. R, and their family remained at Camp Bondsteel for nearly 12 months, living without any privacy in limited, make-shift facilities. *Id.* ¶¶ 122-125. During this time, Mirzaie became pregnant with the couple's fourth child. *Id.* ¶ 130. Due to the lack of adequate medical care, State Department officials urged Mirzaie to leave Camp Bondsteel. *Id.* ¶¶ 126, 136. Mirzaie remained hopeful that the family could obtain sanctuary in a third country, but these efforts proved unsuccessful. *Id.* ¶¶ 137-38. Ultimately, in late September 2022, Mirzaie and her children returned to California without Mr. R. *Id.* ¶¶ 139-40. Mr. R missed the birth of the couple's fourth child in October 2022. *Id.* ¶¶ 141-42. Their youngest child has never met Mr. R in person. *Id.* ¶ 143.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:24-cv-00830-MRA-AJR | Date | March 21, 2025 |
|---|---|---|---|
| Title | Fahimeh Mirzaie v. U.S. Department of State, et al. | | |

Mirzaie and her family have struggled due to Mr. R's ongoing separation. Living in "a permanent state of limbo" for the past decade, Mirzaie "still awaits answers from the U.S. government about why it has refused to grant Mr. R a spousal visa." *Id.* ¶ 144. Effectively a single parent to four children, she has forsaken her dreams of attending medical school and pursuing other career opportunities. *Id.* ¶ 145. Mr. R, who grew up without knowing his father, agonizes over his inability to be present in the daily lives of his children. *Id.* ¶ 147. The family cannot safely reunite in Taliban-controlled Afghanistan, and Mirzaie and her children lack legal status to permanently reside together in any safe third country with Mr. R.[2] *Id.* ¶¶ 77-78, 137, 148; *see also* ECF 46 at 10.

Based on these factual allegations, Plaintiff brings three causes of action: (1) violation of her right to due process under the Fifth Amendment; (2) unlawful agency action under the Administrative Procedure Act ("APA"), and (3) *ultra vires* government action. Compl. ¶¶ 149-64. In relevant part, she alleges that the government failed to provide her timely and adequate notice of a decision on Mr. R's spousal visa application. *Id.* ¶¶ 149-154. She further claims that the CIA and FBI, not the State Department, effectively adjudicated Mr. R's spousal visa application and, in doing so, usurped the State Department's statutory duty and acted outside the scope of their own statutory and regulatory authority. *Id.* ¶¶ 157-58, 161-62. Plaintiff seeks declaratory and injunctive relief. *Id.* at 17-18.

On March 22, 2024, after this case was filed, a consular officer issued Mr. R an amended refusal notice citing "Section 1182(a)(3)(B) Terrorist activities" as the grounds for refusal and noting that no waiver was available. ECF 33-2 (Hines Decl.) ¶ 9, Tab D (ECF 33-2 at 25-27).[3] The government filed the instant Motion on April 14, 2024, arguing that judicial review of Plaintiff's claims is foreclosed by the doctrine of consular non-reviewability and that Plaintiff

---

[2] In March 2024, after this case was filed, Mr. R was granted recognition as a refugee by a European country, which provides him with a three-year period of residency with the option of renewal. ECF 35.

[3] Defendants contend that the Court may consider the amended refusal notice in deciding the government's Rule 12(b)(6) motion in part because it is incorporated by reference in the Complaint. ECF 33-1 at 13 n.4 (citing *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)). The Court agrees with Plaintiff that the amended refusal notice is not incorporated by reference because it post-dates the filing of the Complaint, but that it is subject to judicial notice. ECF 46 at 11 n.1 (citing Fed. R. Evid. 201). The Court, however, declines to consider the remaining materials submitted by the government because, as Plaintiff notes, the government offers no argument for why this extrinsic evidence is properly before the Court at this stage of the litigation. *See id.* at 11 n.2.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:24-cv-00830-MRA-AJR | Date | March 21, 2025 |
|---|---|---|---|
| Title | Fahimeh Mirzaie v. U.S. Department of State, et al. | | |

lacks standing to sue the CIA and the FBI.  ECF 33 at 2; ECF 33-1 at 13-26.  On July 8, 2024, pursuant to the Court's Order, the government filed supplemental briefing in light of the Supreme Court's decisions in *Department of State v. Muñoz*, 602 U.S. 899 (2024), and *Murthy v. Missouri*, 603 U.S. 43 (2024).  ECF 43, 44.  Plaintiff filed her Opposition on July 15, 2024.  ECF 46. The government filed its Reply on July 22, 2024.  ECF 48.  The Court held a hearing on August 1, 2024, and thereafter took the matter under submission.  ECF 49.

## II.    LEGAL STANDARDS

### A.    Subject Matter Jurisdiction

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute."  *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal quotation marks omitted)).    To invoke a federal court's subject matter jurisdiction, a plaintiff must provide "a short and plain statement of the grounds for the court's jurisdiction."  Fed. R. Civ. P. 8(a)(1).    Pursuant to Federal Rule of Civil Procedure 12(b)(1), a defendant may raise a facial or a factual challenge to a federal court's subject matter jurisdiction.  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "A 'facial' attack accepts the truth of the plaintiff's allegations but asserts that they 'are insufficient on their face to invoke federal jurisdiction.'"  *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (quoting *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)).    The court resolves a facial attack by "[a]ccepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor."  *Id.*    "A 'factual' attack, on the other hand, "contests the truth of plaintiff's factual allegations, usually by introducing evidence outside the pleadings.    When the defendant raises a factual attack, the Plaintiff must support her jurisdictional allegations with 'competent proof.'"  *Id.* (internal citations omitted).

### B.    Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for failure to state a claim upon which relief can be granted.   "On a motion to dismiss, all material facts are accepted as true and are construed in the light most favorable to the plaintiff."  *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012) (citing *Coal. for ICANN Transparency, Inc. v. VeriSign, Inc.*, 611 F.3d 495, 501 (9th Cir. 2010)); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).    Dismissal is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.  *See Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008).   In other words, a complaint must "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:24-cv-00830-MRA-AJR | Date | March 21, 2025 |
|---|---|---|---|
| Title | Fahimeh Mirzaie v. U.S. Department of State, et al. | | |

liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (per curiam). This is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## III.    DISCUSSION

### A.    **Immigrant Visa Adjudicative Process**

A noncitizen abroad typically needs a visa to be admitted to the United States.  8 U.S.C. § 1181(a).  "As a general matter, Congress sets the terms for entry, and the Department of State implements those requirements at United States embassies and consulates in foreign countries." *Muñoz*, 602 U.S. at 903.

The visa process for noncitizens abroad with immediate relatives in the United States involves two steps.  *See id.* at 904.  Where, as here, there is a U.S. citizen petitioner and a spouse beneficiary, the U.S. citizen spouse must first file a petition with U.S. Citizenship and Immigration Services ("USCIS"), a sub-agency within DHS, "to have the noncitizen classified as an immediate relative."  *Id.*; 8 U.S.C. §§ 1151(b)(2)(A)(i), 1154(a)(1)(A); 8 C.F.R. § 204.1(a)(1).  If USCIS approves the petition, it forwards the approved petition to the State Department for processing, and the noncitizen spouse may apply for a visa.  8 U.S.C. §§ 1154(b), 1201, 1202.  As part of this process, the noncitizen applicant submits written materials.  *Id.* §§ 1201(a)(1), 1202.  They must also be interviewed in person unless the criteria for waiving that requirement are met.  *Id.* § 1202(h).

The Immigration and Nationality Act (the "INA") delegates to consular officers the authority to adjudicate immigrant visas.  *Id.* §§ 1101(a)(9), (16), 1201(a)(1); 22 C.F.R. §§ 42.71, 42.81.  When a visa application has been properly completed and executed before a consular officer, "the consular officer must [(1)] issue the visa, [(2)] refuse the visa under INA § 212(a) or § 221(g) or other applicable law or, [(3)] pursuant to an outstanding order under INA § 243(d), discontinue granting the visa."  22 C.F.R. § 42.81(a); *see* 8 U.S.C. § 1201(a), (g).  Section 212(a)(3) of the INA renders a noncitizen inadmissible on certain "[s]ecurity and related grounds," including suspected involvement in terrorism activity or membership in a terrorist organization. 8 U.S.C. § 1182(a)(3).  The terrorism bar "covers a broad range of conduct."  *Kerry v. Din*, 576 U.S. 86, 105 (2015) (Kennedy, J., concurring).[4]

---

[4] Unless otherwise indicated, the Court cites Justice Kennedy's concurring opinion in *Kerry v. Din*, 576 U.S. 86 (2015).  *See Cardenas v. United States*, 826 F.3d 1164, 1171 (9th Cir. 2016) (explaining that Justice Kennedy's concurrence is the narrowest and thus controlling

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:24-cv-00830-MRA-AJR | Date | March 21, 2025 |
|---|---|---|---|
| Title | Fahimeh Mirzaie v. U.S. Department of State, et al. | | |

In general, if a consular officer denies a noncitizen's visa application "because the officer determines the alien to be inadmissible" under INA § 212(a), the officer must "provide the [noncitizen] with a timely written notice that–(A) states the determination, and (B) lists the specific provision or provisions of law under which the alien is inadmissible." 8 U.S.C. § 1182(b)(1). This requirement does not apply to any noncitizen deemed inadmissible under INA § 212(a)(3). *Id.* § 1182(b)(3). In such cases, the government "is not prohibited from offering more details when it sees fit, but the statute expressly refrains from requiring it to do so." *Din*, 576 U.S. at 106; *see also* 9 FAM 504.11-3(a)(1) (providing that notwithstanding the statutory language, "it is expected" that notice will be provided even in section 212(a)(3) cases absent exception). Under State Department policy, an applicant can generally overcome a visa refusal "by presenting sufficient evidence to convince [the consular officer] that the ineligibility no longer applies." 9 FAM 306.2-2(A)(c)(1).

### B. Standing

The Constitution limits the federal judicial power to "cases" and "controversies." U.S. Const. art. III, § 2. "For there to be a case or controversy under Article III, the plaintiff must have a 'personal stake' in the case—in other words, standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (quoting *Raines v. Byrd*, 521 U.S. 811, 819 (1997)). "She must show that she has suffered, or will suffer, an injury that is 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Murthy*, 603 U.S. at 57 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). "[E]ach element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561. "Where, as here, a case is at the pleading stage, the plaintiff must clearly . . . allege facts demonstrating each element." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

The government argues that Plaintiff lacks standing to sue the CIA or FBI because her injury is not traceable to the agencies' conduct or redressable through a court order enjoining those agencies.[5] ECF 33-1 at 25. "[T]he 'fairly traceable' and 'redressability' components for

_____

opinion in *Din*).

[5] Because the government's standing challenge is premised on the allegations in the Complaint, not extrinsic evidence, *see* ECF 33-1 at 25, the Court construes the Motion as raising a facial attack to subject matter jurisdiction, not a factual one. *See Safe Air for Everyone*, 373 F.3d at 1039. For the first time on reply, the government passingly states that it has brought a factual attack to Plaintiff's standing. *See* ECF 48 at 18 ("Plaintiff is not entitled to *any*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:24-cv-00830-MRA-AJR | Date | March 21, 2025 |
|---|---|---|---|
| Title | Fahimeh Mirzaie v. U.S. Department of State, et al. | | |

standing overlap and are 'two facets of a single causation requirement.'" *Wash. Env't Council v. Bellon*, 732 F.3d 1131, 1146 (9th Cir. 2013) (quoting *Allen v. Wright*, 468 U.S. 737, 753 n.19 (1984)). The "fairly traceable" requirement "examines the connection between the alleged misconduct and injury, whereas redressability analyzes the connection between the alleged injury and requested judicial relief." *Id.* (citation omitted).

### 1. Traceability

"An injury is 'fairly traceable' where there is a causal connection between the injury and the defendant's challenged conduct." *Wit v. United Behav. Health*, 79 F.4th 1068, 1083 (9th Cir. 2023). "The whole purpose of the traceability requirement is to ensure that 'in fact, the asserted injury was the consequence of the defendants' actions,' rather than of 'the independent action' of a third party." *Murthy*, 603 U.S. at 69 n.8.

The government argues that Plaintiff's injury—the denial of Mr. R's visa—is not traceable to the CIA or FBI, but to the State Department. ECF 33-1 at 25. Plaintiff responds that her injury is traceable to the CIA and FBI's "usurpation of the consular officer's exclusive statutory authority to render visa determinations." ECF 46 at 17. The Court agrees that the traceability requirement is satisfied here. At a minimum, Plaintiff has plausibly alleged that the CIA and FBI influenced Mr. R's visa refusal, and as such, her injury bears a causal connection to their conduct.

The government's reliance on *Murthy* is misplaced. *See* ECF 44 at 6-7; ECF 48 at 18. In *Murthy*, social media users alleged that restrictions on their speech were traceable to federal agency officers who allegedly pressured non-party social media platforms to moderate content. 603 U.S. at 48. The Court explained that under its precedent at least one plaintiff needed to make a threshold showing that "a particular defendant pressured a particular platform to censor a particular topic before that platform suppressed a particular plaintiff's speech on that topic." *Id.* at 61. Because the third-party platforms began to suppress plaintiffs' speech *before* the government's challenged communications began, the causal link between the government's alleged conduct and the purported injury was found to be attenuated. *Id.*

---

assumptions of truth in factual attacks to jurisdiction, which is what this is."). This is a different legal argument from the one made in the Motion, which does not dispute Plaintiff's factual allegations or rely on any extrinsic evidence in arguing that Plaintiff lacks standing. *See* ECF 33-1 at 25. The Court declines to consider this late argument because "[i]t is improper for a moving party to introduce new facts or different legal arguments in the reply brief than those presented in the moving papers." *United States ex rel. Giles v. Sardie*, 191 F. Supp. 2d 1117, 1127 (C.D. Cal. 2000).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:24-cv-00830-MRA-AJR | Date | March 21, 2025 |
|---|---|---|---|
| Title | Fahimeh Mirzaie v. U.S. Department of State, et al. | | |

Where the government's actions could not be disentangled from the third-party platforms' "independent incentives to moderate content" in that case, *id.*, the CIA and FBI's alleged conduct here does not suffer from any of the same causal deficiencies.   Plaintiff alleges that the CIA and FBI were intimately involved in the visa adjudication process, and that the consular officer refused Mr. R's visa because of or in deference to the CIA and FBI's vetting determinations.   In its Reply, the government implies that this theory of liability implicates consular non-reviewability because it presumes the Court can look behind the visa determination to determine whether it can look behind the visa determination.   ECF 48 at 19-20.   That may be, but consular non-reviewability is not "a constraint on subject matter jurisdiction," rather it reflects the judiciary's "respect for the separation of powers."   *Allen v. Milas*, 896 F.3d 1094, 1101 (9th Cir. 2018).   That is, it does not strip Plaintiff of standing to sue but may constrain Plaintiff's ability to state a claim upon which relief can be granted.

### 2.      *Redressability*

To determine whether an injury is redressable, courts "consider the relationship between the judicial relief requested and the injury suffered.'"   *Murthy*, 603 U.S. at 73 (quoting *California v. Texas*, 593 U.S. 659, 671 (2021)).   "Redressability does not require certainty, but only a substantial likelihood that the injury will be redressed by a favorable judicial decision."   *Wash. Env't Council*, 732 F.3d at 1146 (citing *Wolfson v. Brammer*, 616 F.3d 1045, 1056 (9th Cir. 2010)).   In the context of an alleged APA violation, the plaintiff need only show "that the relief requested—that the agency follow the correct procedures—may influence the agency's ultimate decision of whether to take or refrain from taking a certain action."   *Salmon Spawning & Recovery All. v. Gutierrez*, 545 F.3d 1220, 1226-27 (9th Cir. 2088).

The government argues that Plaintiff fails to plausibly allege that her injury can be redressed by a court order directed at the CIA and FBI because these agencies cannot issue or refuse an immigrant visa.   ECF 33-1 at 25-26.   Plaintiff does not dispute that the CIA and FBI lack statutory authority to set aside or re-adjudicate an immigrant visa application.   ECF 46 at 17. Nevertheless, she contends that her injury can be redressed by setting aside the visa denial and remanding to the State Department to re-adjudicate Mr. R's visa application consistent with its statutory authority.   ECF 46 at 17; *see Se. Alaska Conservation Council v. U.S. Army Corps of Eng'rs*, 486 F.3d 638, 654 (9th Cir. 2007) (providing that "the normal remedy" under the APA is to "vacate the agency's action and remand to the agency to act in compliance with its statutory obligations." (citation omitted)), *rev'd on other grounds sub nom. Coeur Alaska v. Se. Alaska Conservation Council*, 557 U.S. 261 (2009).   Even if the redressability prong requires more, Plaintiff contends that "the FBI and CIA refraining from further unlawful usurpation *is* action" subject to judicial remedy.   ECF 46 at 18.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:24-cv-00830-MRA-AJR | Date | March 21, 2025 |
|---|---|---|---|
| Title | Fahimeh Mirzaie v. U.S. Department of State, et al. | | |

The Court agrees with Plaintiff that if she prevails, a decision setting aside Mr. R's visa denial, requiring the State Department to re-adjudicate his visa application consistent with its statutory obligations, and enjoining the CIA and FBI from further usurping the consular officer's adjudicative process, would conceivably redress her injury. Such an order is "not certain" to result in a visa approval, *Wolfson*, 616 F.3d at 1056, but it "may influence" the agencies' decisions on re-adjudication, *Salmon Spawning*, 545 F.3d at 1226-27. The government is correct in noting that the Complaint does not pray for any injunctive relief restraining the CIA or FBI. ECF 48 at 20; *cf.* Compl. at 17. But "a district court is not limited to a plaintiff's proposal." *Day v. Henry*, No. 23-16148, 2025 WL 679808 (9th Cir. Mar. 4, 2025). Instead, it "may enter any injunction it deems appropriate, so long as the injunction is 'no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs.'" *Kirola v. City & Cnty. of San Francisco*, 860 F.3d 1164, 1176 (9th Cir. 2017) (quoting *United States v. AMC Ent., Inc.*, 549 F.3d 760, 775 (9th Cir. 2008)).

Relying on *Murthy*, the government maintains that "standing is 'not dispensed in gross' and does not look at defendants 'as a unified whole.'" ECF 48 at 19 (quoting *Murthy*, 603 U.S. at 61). But here, Plaintiff has "'demonstrate[d] standing for each claim that [she] press[es]' against each defendant, 'and for each form of relief that [she] seek[s].'" *Murthy*, 603 U.S. at 61. As with traceability, this case does not present the same redressability concerns raised in *Murthy*. There, even though the plaintiffs' standing depended on the social media platforms' content restrictions, they sought only to enjoin the government from pressuring or encouraging the platforms to suppress protected speech (*not* to enjoin the platforms from restricting any posts or accounts). *Murthy*, 603 U.S. at 57, 73. This raised a clear redressability problem: "[a] court *could* prevent the Government from coercing or encouraging the platforms to suppress speech," *id.* at 73, but "the platforms [would] remain free to enforce, or not to enforce, those policies— even those tainted by initial governmental coercion," *id.* Unlike the relief contemplated in *Murthy*, an order requiring the State Department to re-adjudicate Mr. R's visa in accordance with its statutory obligations and restraining the CIA and FBI from engaging in *ultra vires* adjudication of Mr. R's visa application is capable of redressing Plaintiff's injury.

Accordingly, the Court **DENIES** Defendants' Rule 12(b)(1) Motion.

**C.    The Doctrine of Consular Non-Reviewability**

"[T]he admission and exclusion of foreign nationals is a 'fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control.'" *Trump v. Hawaii*, 585 U.S. 667, 702 (2018) (quoting *Fiallo v. Bell*, 430 U.S. 787, 792 (1977)). This principle, known as the doctrine of consular nonreviewability, generally insulates a consular

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:24-cv-00830-MRA-AJR | Date | March 21, 2025 |
|----------|----------------------|------|----------------|
| Title | Fahimeh Mirzaie v. U.S. Department of State, et al. | | |

officer's denial of an immigrant visa. *Muñoz*, 602 U.S. at 908. "[A] narrow exception to this bar exists 'when the denial of a visa allegedly burdens the constitutional rights of a U.S. citizen.'" *Muñoz*, 602 U.S. at 908 (quoting *Hawaii*, 585 U.S. at 703). When this exception is implicated, the court engages in "a circumscribed judicial inquiry." *Hawaii*, 585 U.S. at 703 (citing *Kleindienst v. Mandel*, 408 U.S. 753, 770 (1972)). Its review is limited to considering "whether the executive official gave a 'facially legitimate and bona fide reason' for denying the visa." *Muñoz*, 602 U.S. at 908 (quoting *Din*, 576 U.S. at 103-04); *Mandel*, 408 U.S. at 770. If given, "the inquiry is at an end." *Muñoz*, 602 U.S. at 908. The court will not "'look behind the exercise of that discretion,' much less to balance the reason given against the asserted constitutional right." *Id.* (quoting *Din*, 576 U.S. at 104); *Mandel*, 408 U.S. at 770.

The government argues that consular non-reviewability "squarely applies" to foreclose Plaintiff's non-constitutional claims. ECF 33-1 at 13-15. It also maintains that Plaintiff has no constitutionally protected liberty interest in her spouse's visa application, and even if she did, the consular officer gave a facially legitimate and bona fide reason for the denial. *Id.* at 16-20; ECF 40 at 3-6. Plaintiff responds that consular non-reviewability does not bar judicial review of *ultra vires* visa denials by non-consular officials. ECF 46 at 12-16. She also maintains that the government has wrongfully interfered with "a range of her liberty interests" in seeking constitutionally adequate procedural due process. *Id.* at 18-25.

### 1.    *Non-Constitutional Claims*

Plaintiff concedes that consular non-reviewability bars judicial review of an APA challenge of a consular officer's visa determination. *See* ECF 46 at 12; *see also Allen*, 896 F.3d at 1108 (holding that "the APA provides no avenue for review of a consular officer's adjudication of a visa on the merits"). However, Plaintiff maintains that Mr. R's visa determination was made by the CIA and FBI, not a consular officer. And because it is uncontested that the CIA and FBI lack statutory authority to adjudicate an immigrant visa, "the only question for this Court to resolve is whether the facts, viewed in the light most favorable to Plaintiff, state a claim that Mr. R's visa refusal was unlawful because the decision was not made by a consular officer." ECF 46 at 13.

The government contends that, as a threshold matter, consular non-reviewability "extends to 'the Executive' as a whole," not just the visa determination of a consular officer. ECF 48 at 13. This broad reading of the doctrine appears to accord with its genesis in *Mandel*, whose "holding is plainly stated in terms of the power delegated by Congress to 'the Executive.'" *Bustamante v. Mukasey*, 531 F.3d 1059, 1062 n.1 (9th Cir. 2008); *see also Din*, 576 U.S. at 103; *Hawaii*, 585 U.S. at 703-08. There, "[t]he Supreme Court said nothing to suggest that the reasoning or outcome would vary according to which executive officer is exercising the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:24-cv-00830-MRA-AJR | Date | March 21, 2025 |
|---|---|---|---|
| Title | Fahimeh Mirzaie v. U.S. Department of State, et al. | | |

Congressionally-delegated power to exclude." *Bustamante*, 531 F.3d at 1062 n.1. Indeed, "the rule is 'based on the recognition that the power to exclude or expel [noncitizens], as a matter affecting international relations and national security, is vested in the Executive and Legislative branches of government'" writ large, not just consular officers. *Allen*, 896 F.3d at 1104 (quoting *Ventura-Escamilla v. Immigr. & Naturalization Serv.*, 647 F.2d 28, 30 (9th Cir. 1981)).

Consistent with these overarching separation-of-power principles, courts have generally found that the doctrine of consular non-reviewability "applies even where a plaintiff challenges some other, related aspect of a consular officer's decision to deny a visa," including acts or omissions involving other Executive agencies. *Pak v. Biden*, 91 F.4th 896, 901 (7th Cir. 2024); *see Malyutin v. Rice*, 677 F. Supp. 2d 43, 46 (D.D.C. 2009) (holding that a plaintiff cannot "circumvent the doctrine by claiming that he is not seeking a review of the consular officer's decision, but is challenging some other, related aspect of the decision"), *aff'd*, No. 10-5015, 2010 WL 2710451 (D.C. Cir. July 6, 2010); *Amiri v. Sec'y, Dep't of Homeland Sec.*, 818 F. App'x 523, 528 (6th Cir. 2020) (rejecting plaintiff's argument that the doctrine of consular non-reviewability does not apply where the challenged discretionary decision was made by DHS); *Algzaly v. Blinken*, No. 21-16375, 2022 WL 2235785 (9th Cir. June 22, 2022) (applying the doctrine where plaintiff brought an APA claim challenging USCIS's denial of a waiver of inadmissibility based on a consular officer's visa denial); *Han v. Tarango*, No. 23-cv-06159-JSC, 2024 WL 3186556, at *2 (N.D. Cal. June 25, 2023) (finding that the doctrine applies "whether [plaintiff] is challenging the consular office's visa denial, the USCIS fraud finding underpinning the visa denial, or the USCIS refusal to waive [plaintiff]'s inadmissibility"). Thus, allegations that other Executive agencies—here, the CIA and FBI—impermissibly affected a visa denial does not necessarily sidestep the doctrine of consular non-reviewability.

The doctrine of consular non-reviewability does not altogether foreclose challenges to acts or omissions that are inconsistent with Congress' delegation of power or the Executive's own regulations. For instance, the doctrine does not preclude review of presidential proclamations indefinitely barring entry of nationals from certain countries because such acts are "not about individual visa denials, but instead concern[] 'the President's *promulgation* of sweeping immigration policy.'" *Hawaii v. Trump*, 878 F.3d 662, 682 (9th Cir. 2017) (citation omitted), *rev'd on other grounds and remanded*, 585 U.S. at 683 (assuming without deciding that plaintiff's statutory claims are reviewable, notwithstanding consular non-reviewability). Nor does the doctrine bar review of suits challenging the State Department for failure to follow the INA and its own regulations. *See Mulligan v. Shultz*, 848 F.2d 655, 657 (5th Cir. 1988) (finding that consular non-reviewability did not bar review of challenge to the authority of the Secretary of State to issue regulations governing visa processing); *Abourezk v. Reagan*, 785 F.2d 1043, 1051 n.6 (D.C. Cir. 1986) (distinguishing case from others applying consular non-reviewability where the claims

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:24-cv-00830-MRA-AJR | Date | March 21, 2025 |
|---|---|---|---|
| Title | Fahimeh Mirzaie v. U.S. Department of State, et al. | | |

"concern[ed] the decisions of [the State Department] officials rather than consular officers abroad"). Further, because consular officers are required by law to act on visa applications (*i.e.,* either grant or deny), *see* 22 C.F.R. § 42.81, the Ninth Circuit has recognized that the doctrine does not apply "when the suit challenges the authority of the consul to take or fail to take an action as opposed to a decision taken within the consul's discretion," *Patel v. Reno*, 134 F.3d 929, 931-32 (9th Cir. 1997); *see also Raduga USA Corp. v. U.S. Dep't of State*, 440 F. Supp. 2d 1140, 1146 (S.D. Cal. 2005) (holding that consular non-reviewability is inapposite where plaintiffs sought to compel a consul's adjudication of a visa application, not review of a rendered decision).

It follows that because only consular officers have delegated authority to issue or deny visas, consular non-reviewability does not shield an *ultra vires* denial of a visa application by non-consular officials, where such a claim is plausibly stated. Here, Plaintiff's essential theory is that the CIA and FBI denied Mr. R's visa, and consular officer Hayward was merely a "rubber-stamp." ECF 46 at 15. In support, Plaintiff alleges that no consular officer ever interviewed Mr. R, Compl. ¶¶ 57-59, 68, 91, and Hayward was not present when the CIA and FBI interrogated Mr. R on multiple occasions, *id.* ¶ 99. Hayward also indicated to Mirzaie that his hands were tied—Mr. R would not be issued a visa until he was cleared by the vetting team. *Id.* ¶ 112. On several occasions, the CIA and FBI pressured Mr. R to cooperate with law enforcement. *Id.* ¶¶ 45-46, 87, 89.

Notwithstanding these allegations, the Court cannot ignore that Hayward ultimately informed the couple of the visa denial and issued a written denial notice, later amended to cite the grounds for refusal. *Id.* ¶¶ 114, 117; ECF 33-2 at 25-26. These facts prove fatal to Plaintiff's non-constitutional claims because the refusal *decision* was ultimately made by the consular officer as required by statute, not the CIA or FBI. That Hayward relied on interagency vetting prior to denying Mr. R's application is not untoward. Congress contemplated interagency cooperation in visa determinations implicating national and border security. The INA expressly requires the State Department "to maintain direct and continuous liaison" with other agencies, including the CIA and FBI, "for the purpose of obtaining and exchanging information for use in enforcing the provisions of [the INA] in the interest of the internal and border security of the United States." 8 U.S.C. § 1105(a); *see also Bustamante*, 531 F.3d at 1063 (recognizing coordination with law enforcement agencies in adjudicating immigrant visa applications); 9 FAM 302.6-3(B)(3)(b) (providing that interagency consultation required for § 1182(a)(3)(F) findings); 9 FAM 302.5-4(B)(2)(i) (noting consular officers can rely on "[c]redible information provided by local or U.S. law enforcement authorities, or other government agencies" to discern criminal organization membership); 9 FAM 602.2-2(A)(2) (noting DHS consultation during fraud investigations).

In her Opposition, Plaintiff alleges that "Hayward did not rely on information provided to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:24-cv-00830-MRA-AJR | Date | March 21, 2025 |
|---|---|---|---|
| Title | Fahimeh Mirzaie v. U.S. Department of State, et al. | | |

him by other agencies to make an *independent* determination on Mr. R's visa application." ECF 46 at 15. She notes, for instance, that "[t]here is no evidence that [Hayward] requested a[] [Security Advisory Opinion ('SAO')] report or indeed that he relied on anything beyond the security vetting results." *Id.* However, the Court agrees with the government that in challenging whether the consular officer's decision was sufficiently "independent," Plaintiff is in effect "looking behind the consular officer's decision to determine whether the Court can look behind the consular officer's decision," which is, as the government puts it, "*still* looking behind the consular officer's decision." ECF 48 at 12; *cf. Mandel*, 408 U.S. at 770. Notably, even if the Court were to accept Plaintiff's new allegations as true, she "do[es] not allege that the transfer of information between the [CIA and FBI] and the Consulate never took place, or that the Consulate acted upon information it knew to be false." *Bustamante*, 531 F.3d at 1063. At best, Plaintiff's argument is that the consular officer improperly relied on cursory, unreliable information (*i.e.*, the vetting report), *not* that the decision itself was in fact made by the CIA and FBI. *See* ECF 46 at 15. These allegations do not support an *ultra vires* claim against the CIA or FBI and otherwise impermissibly require the Court to look behind the consular officer's decision.

Accordingly, the Court **GRANTS** Defendants' Rule 12(b)(6) Motion as to Claims 2 and 3.

### 2. *Constitutional Claim*

The government argues that Plaintiff has no recognized constitutionally protected liberty interest in her spouse's visa application following the Supreme Court's decision in *Muñoz*, and even if she did, she was provided any process she was due. ECF 33-1 at 15-25; ECF 44 at 3-6. Plaintiff responds that *Muñoz* does not foreclose the "range of her liberty interests" that trigger her right to constitutionally adequate procedural due process, and that she is "due a visa adjudication consistent with the [INA]." ECF 46 at 18-25.

The Due Process Clause of the Fifth Amendment provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. The standard due process analysis proceeds in two steps: (1) "whether there exists a liberty or property interest of which a person has been deprived" and (2) if so, "whether the procedures followed by the [government] were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (per curiam). Where certain fundamental rights and liberty interests are at stake, the Clause "promises more than fair process: It also 'provides heightened protection against government interference with certain fundamental rights and liberty interests.'" *Muñoz*, 602 U.S. at 910 (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:24-cv-00830-MRA-AJR | Date | March 21, 2025 |
|---|---|---|---|
| Title | Fahimeh Mirzaie v. U.S. Department of State, et al. | | |

### a)    Liberty Interests

Plaintiff primarily alleges that the government's adjudicative process interfered with "her liberty interests related to marriage, family unit and child-rearing."  ECF 46 at 22; *see also* Compl. ¶ 150 ("[Mirzaie] has a constitutionally protected liberty interest in her marriage, in living as a family with Mr. R and their children in the United States, and in her non-citizen spouse's visa application[.]"); Tr. at 7:10-16.  She also asserts a right "in associating with her spouse and children together in the family unit."  Tr. at 7:16-18; ECF 46 at 22-23.

The government contends that *Muñoz* forecloses any liberty interest based on Plaintiff's marital, familial relations, and parenting interests.  ECF 44 at 3-6; ECF 48 at 7-11.  *Muñoz* held that "a citizen does not have a fundamental liberty interest in her noncitizen spouse being admitted to the country."  602 U.S. at 909.  Because no fundamental right is at stake, as a matter of substantive due process, there is no associated requirement that the government "act only by narrowly tailored means that serve a compelling state interest."  *Id.* (citing *Glucksberg*, 521 U.S. at 721); *Din*, 576 U.S. at 92-93 (considering whether the interests of a spouse in seeking admission of their spouse implicated an "implied 'fundamental right[]'" triggering strict scrutiny).  In so holding, the Court reversed the Ninth Circuit's core determination that a government's visa denial "conditions enjoyment of one fundamental right (marriage) on the sacrifice of another (residing in one's country of citizenship)."  *Muñoz v. U.S. Dept. of State*, 50 F.4th 906, 916 (9th Cir. 2022), *rev'd and remanded*, 602 U.S. at 914 ("[W]hile Congress has made it easier for spouses to immigrate, it has never made spousal immigration a matter of right.").

Plaintiff argues that even if her asserted liberty interests do not give rise to a fundamental right, the Supreme Court has "never squarely evaluated whether liberty interests protected by the procedural due process branch of the Fifth Amendment impose basic limits on the immigrant visa adjudication procedure."  ECF 46 at 21.  But *Muñoz* was not silent on procedural due process either.  The Court held that a U.S. citizen's "claim to a procedural due process right in *someone else's* legal proceeding would have unsettling collateral consequences."  *Muñoz*, 602 U.S. at 916.  Such a position "would usher in a new strain of constitutional law, for the Constitution does not ordinarily prevent the government from taking actions that 'indirectly or incidentally' burden a citizen's legal rights."  *Id.* at 917 (citing *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 767 (2005)).  Because of this limitation, the Court acknowledged that the respondent "ha[d] suffered harm from the denial of [her spouse]'s visa application, but that harm does not give her a constitutional right to participate in his consular process."  602 U.S. at 917.

At the hearing, Plaintiff asserted that *Muñoz* "only foreclose[s] a procedural due process right that hinges on the alleged liberty to bring one's noncitizen spouse to the United States and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:24-cv-00830-MRA-AJR | Date | March 21, 2025 |
|---|---|---|---|
| Title | Fahimeh Mirzaie v. U.S. Department of State, et al. | | |

wouldn't foreclose any other procedural due process potential challenges." Tr. at 7:4-7. This argument finds support in the Ninth Circuit's decision in *Bustamante*, which interpreted *Mandel* to provide that "a U.S. citizen raising a constitutional challenge to the denial of a visa is entitled to a limited judicial inquiry regarding the reason for the decision." 531 F.3d at 1062. In *Muñoz*, the Ninth Circuit "remain[ed] convinced that *Bustamante* correctly recognized that a U.S. citizen possesses a liberty interest in a non-citizen spouse's visa application." 50 F.4th at 916. "[B]ecause '[f]reedom of personal choice in matters of marriage and family life is, of course, one of the liberties protected by the Due Process Clause,' a U.S. citizen possesses a protected liberty interest in 'constitutionally adequate procedures in the adjudication of [a non-citizen spouse's] visa application' to the extent authorized in *Mandel*." *Id.* at 915 (quoting *Bustamante*, 531 F.3d at 1062) (emphasis omitted).

This procedural due process argument, however, was rejected by the Supreme Court on review. *Muñoz*, 602 U.S. at 919 (describing procedural due process as "an odd vehicle" for the plaintiff's argument). The Court made explicit that "*Mandel* does *not* hold that a citizen's independent constitutional right (say, a free speech claim) gives that citizen a procedural due process right to a 'facially legitimate and bona fide reason' for why someone else's visa was denied." *Id.* at 917-19. In so holding, *Muñoz* abrogated the Ninth Circuit's decision in *Bustamante* (and its progeny).

In her Opposition, Plaintiff newly alleges that the amended denial notice implicates a "range of [her] First Amendment-related associational liberty interests." ECF 46 at 22; *see also* Tr. at 7:16-18. Of note, Plaintiff argues that the government's terrorism allegation, in conjunction with the factually sparse visa denial, burdens her with "a Hobson's choice: face separation and refrain from a wide variety of otherwise lawful, constitutionally protected activities (such as associating with her husband) or risk denaturalization and/or prosecution." *Id.* at 23. The government responds that this "guilt-by-association" theory was not pleaded in the Complaint, but even if it was, it is not cognizable and not factually supported. ECF 48 at 8-10.

Although Plaintiff's associational interests are "sort of encompassed by [her] factual allegations," Tr. at 9:14, Plaintiff does not allege in explicit terms any First Amendment interests in her Complaint. As such, this theory is not properly before the Court on a Rule 12(b)(6) motion to dismiss. *See Gerritsen v. Warner Bros. Ent.*, 116 F. Supp. 3d 1104, 1126 (C.D. Cal. 2015) ("[I]t is improper for a plaintiff to assert an unpled theory of liability in opposition to a defendant's Rule 12(b)(6) motion to dismiss."); *see also Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) ("[W]hen the legal sufficiency of a complaint's allegations is tested by a motion under Rule 12(b)(6), review is limited to the complaint." (citation and internal quotation marks omitted)). Without the benefit of pleaded facts, the Court is loath to consider the merits of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:24-cv-00830-MRA-AJR | Date | March 21, 2025 |
|---|---|---|---|
| Title | Fahimeh Mirzaie v. U.S. Department of State, et al. | | |

Plaintiff's First Amendment allegations.

The government contends that "*Mandel* has already rejected the proposition that a citizen's First Amendment claim compels the admission of a foreign noncitizen," ECF 48 at 10, but *Mandel* is distinguishable. There, the Court was concerned with the First Amendment interests of professors seeking the temporary entry of a foreign journalist and intellectual to personally communicate with the noncitizen and further academic exchange. *Mandel*, 408 U.S. at 762-65. *Mandel* recognized the professors' First Amendment rights in communicating with the intellectual but declined to balance those rights against governmental regulatory interests because the government had provided a facially legitimate and bona fide reason for the denial in that instance. *Id.* at 765-70. It *did not* foreclose application of the First Amendment writ large, much less the associational interests asserted by Plaintiff here.

### b) Facially Legitimate and Bona Fide Reason

Assuming arguendo the visa adjudication burdened Plaintiff's liberty interests, the government contends that the consular officer gave a facially legitimate and bona fide reason for the denial in satisfaction of the limited review required under *Mandel*. ECF 33-1 at 19-25.

The *Mandel* exception to consular non-reviewability is still "quite narrow, requiring deference to the consular officer's decision so long as 'th[e] reason [for the visa denial] was facially legitimate and bona fide.'" *Allen*, 896 F.3d at 1105 (quoting *Mandel*, 408 U.S. at 769). The *Din* concurrence sets forth two components to a facially legitimate and bona fide reason. *See Din*, 576 U.S. at 103-06. First, "the consular officer must deny the visa under a valid statute of inadmissibility." *Cardenas v. United States*, 826 F.3d 1164, 1172 (9th Cir. 2016) (quoting *Din*, 576 U.S. at 104). Second, "the consular officer must cite an admissibility statute that 'specifies discrete factual predicates the consular officer must find to exist before denying a visa,' or there must be a fact in the record that 'provides at least a facial connection to' the statutory ground of inadmissibility." *Id.* (quoting *Din*, 576 U.S. at 105).

The amended denial notice cites a valid inadmissibility provision, § 1182(a)(3)(B). ECF 33-2 at 25-26. *Din* considered a visa denial based on the same inadmissibility ground. 576 U.S. at 102-04. There, Justice Kennedy's concurrence found that "[t]he consular officer's citation of that provision suffices to show that the denial rested on a determination that [plaintiff's spouse] did not satisfy the statute's requirements," and therefore is facially legitimate under *Mandel*. *Id.* at 104-05. The concurrence also determined that citation of § 1182(a)(3)(B) indicates that the consular officer "relied upon a bona fide factual basis for denying a visa" because the statutory provision "specifies discrete factual predicates the consular officer must find to exist before denying a visa." *Id.* at 105. It rejected respondent's argument that the government must "point

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:24-cv-00830-MRA-AJR | Date | March 21, 2025 |
|---|---|---|---|
| Title | Fahimeh Mirzaie v. U.S. Department of State, et al. | | |

to a more specific provision within § 1182(a)(3)(B)," *id.*, reasoning that "Congress evaluated the benefits and burdens of notice in this sensitive area and assigned discretion to the Executive to decide when more detailed disclosure is appropriate," *id.* at 106.   Thus, consistent with the *Din* concurrence, the Court finds that the consular officer offered a facially legitimate and bona fide reason for the denial of Mr. R's visa application.

Plaintiff does not distinguish the *Din* concurrence or otherwise argue that the consular officer failed to provide a facially legitimate and bona fide reason under *Mandel*.   Instead, she proceeds to the three-factor balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), arguing that the reasons for Mr. R's visa denial "must adequately specify the factual and legal basis of inadmissibility and include an opportunity to be heard sufficient to enable [Mirzaie] to rebut underlying evidence."   ECF 46 at 21-25. But *Mathews* is inapposite.   Although "identification of the specific dictates of due process *generally* requires consideration of [the] three distinct factors" set forth in that decision, *Mathews*, 424 U.S. at 335 (emphasis added), courts do "not to proceed to this balancing test if the government proffers 'a facially legitimate and bona fide reason' for denying the visa." *Muñoz*, 50 F.4th at 921 (citing *Din*, 576 U.S. at 104 and *Mandel*, 408 U.S. at 766-70); *see also Bustamante*, 531 F.3d at 1062 ("As long as the reason given is facially legitimate and bona fide the decision will not be disturbed.").   Indeed, *Mandel* is clear that when a visa denial is based on a facially legitimate and bona fide reason, "the courts will neither look behind the exercise of that discretion, *nor test it* by balancing its justification against the [constitutional] interests" of the U.S. citizen.   408 U.S. at 770 (emphasis added).   Thus, where, as here, the government has proffered a facially legitimate and bona fide reason, no balancing is required.

### c)   *Bad Faith*

Once the government has made a showing of a facially legitimate and bona fide reason, "the plaintiff has the burden of proving that the reason was not bona fide by making an 'affirmative showing of bad faith on the part of the consular officer[.]'"   *Cardenas*, 826 F.3d at 1172 (quoting *Din*, 576 U.S. at 105).   Bad faith must be "plausibly alleged with sufficient particularity."   *Din*, 576 U.S. at 105.   To state bad faith, a plaintiff must "allege that the consular official did not in good faith believe the information he had," or that he "acted upon information [he] knew to be false."   *Bustamante*, 531 F.3d at 1062-63.

Plaintiff alleges that the visa denial "was made in bad faith," Compl. ¶ 153, but such conclusory statements are not taken as true absent particularized factual support.   That the consular officer's reliance on the CIA and FBI's vetting in issuing a denial is insufficient because "a consular official's reliance upon information supplied by another agency . . . weigh[s] strongly

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:24-cv-00830-MRA-AJR | Date | March 21, 2025 |
|---|---|---|---|
| Title | Fahimeh Mirzaie v. U.S. Department of State, et al. | | |

against a finding of bad faith." *Khachatryan v. Blinken*, 4 F.4th 841, 854 (9th Cir. 2021) (citing *Bustamante*, 531 F.3d at 1063); *see also Amiri v. Kelly*, No. 17-CV-12188, 2018 WL 623652, at *10 (E.D. Mich. Jan. 30, 2018) (finding that similar allegations of rubber-stamping adverse security checks "compel the conclusion that the consular official did not act in bad faith, but did precisely what was directed by his job duties and the applicable law"), *aff'd sub nom, Amiri*, 818 F. App'x 523. The unreasonableness of a consular officer's actions is a factor to consider in assessing whether subjective bad faith has been plausibly stated. *Khachatryan*, 4 F.4th at 853. However, "[i]t is not enough to allege that the consular official's information was incorrect." *Bustamante*, 531 F.3d at 1062-63. Nor does a consular officer's refusal to consider evidence necessarily amount to bad faith. *See Cardenas*, 826 F.3d at 1172 (finding that refusal to consider expert opinion was not bad faith). Plaintiff's Opposition is silent on this issue. As such, she has not sufficiently alleged bad faith.

\*\*\*

On the record presented, the Court finds that Plaintiff has not plausibly alleged a deprivation of a constitutionally protected liberty interest. Even if limited review under *Mandel* were warranted, the government has shown that the decision was facially legitimate and bona fide. Absent a showing of bad faith, the inquiry is at an end. Accordingly, the Court **GRANTS** Defendants' Rule 12(b)(6) Motion as to Claim 1.

**D.     Leave to Amend**

Federal Rule of Civil Procedure 15(a) provides that once the time for amending a pleading as a matter of course has expired, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). In general, "[t]he court should freely give leave when justice so requires." *Id.* At base, "leave to amend should be granted if it appears *at all possible* that the plaintiff can correct the defect." *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000)).

The Court finds that granting leave to amend would not be futile. *See United States v. Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011) ("Leave to amend is warranted if the deficiencies can be cured with additional allegations that are 'consistent with the challenged pleading' and that do not contradict the allegations in the original complaint." (quoting *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296-97 (9th Cir. 1990)). Plaintiff is therefore **GRANTED** leave to amend the pleading, correcting the deficiencies identified herein in a manner consistent with all Rule 11 obligations.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:24-cv-00830-MRA-AJR | Date | March 21, 2025 |
|---|---|---|---|
| Title | Fahimeh Mirzaie v. U.S. Department of State, et al. | | |

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, the Motion to Dismiss Plaintiff's Complaint is **GRANTED with leave to amend**.   Any amended complaint shall be filed no later than **21 days** after the date of this Order.   Plaintiff shall attach to the amended complaint a redline copy reflecting all additions and deletions of material from the Complaint.   Any claim not included in a timely-filed amended complaint will be deemed dismissed without leave to amend.

**IT IS SO ORDERED.**

                                                    -       :       -

                        Initials of Deputy Clerk    gga